ROBERT ROGERS et al., Executors of JOSEPH THORNTON, deceased, *v.* ROBERT W. PLAYFORD.

1. The Supreme Court will not undertake to rectify errors in awards of referees, which require the sanction of the Common Pleas, where the errors rest on facts extrinsic to the record; and the decision of the Common Pleas thereupon cannot be reviewed, unless there be errors of law patent on the record.

2. The return of the referees will be taken as full proof, in the Supreme Court, of the fact of an oral arrangement having been made by parties to change the place of meeting designated in the submission.

3. Where, by a submission to referees, it was agreed that there should be "no appeal taken or exception filed," and the proper Court declared the conduct of the referees to be honest and fair, the party found in default cannot come into this Court to raise technical objections, in violation of that agreement.

4. The Common Pleas may impose terms, on confirming an award of referees.

ERROR to the Common Pleas of Fayette.

*Oct.* 30.   This was an amicable reference under the Act 21st March, 1806, regulating arbitrations and proceedings in Courts of justice, in which Dr. Playford was plaintiff, and the executors of Joseph Thornton, deceased, were defendants.   Upon the filing of the award in the Court below, exceptions thereto were taken by the defendants, and upon the confirmation of the award this writ of error was sued out.

The agreement of reference, after stating the Act under and in pursuance of which it was made and the parties, proceeds: Whereas the said Playford claims to have an unsettled account, it is hereby agreed to submit the same as well as all unsettled accounts and claims between the said Playford and the estate of Joseph Thornton, deceased, to the arbitrament of, &c., &c., whose award thereon shall be final and conclusive against both parties, and from which there shall be no appeal taken or exceptions filed.

It is understood and agreed upon that the said referees above mentioned are to meet, some place in the borough of Brownsville designated by the parties, upon ten days' notice.

The agreement was signed, sealed and delivered in the presence of a witness.

Several meetings were held and adjourned from time to time, until the 12th of August, 1848, when an entry to the following effect was made on the agreement: "E. H., one of the referees, met at the house of D. B. in pursuance of adjournment, and W. S. and G. N. (the other referees) being absent, cause adjourned by

Q

agreement of parties to meet at Masontown, at the house, &c., on, &c., &c. :" signed E. H.

Agreeably to that adjournment, the referees met at Masontown, and, examining the account of parties, found for the plaintiff $2818.50.

The notice of the award, service of notice, and the agreement to refer having been proved, the award being endorsed on the agreement, the papers were handed to the prothonotary by the counsel of Playford " open and unsealed, and so by him filed."

To this award the defendants filed a number of exceptions, to the effect that the adjournment to Masontown was by one referee alone, without their knowledge or consent, and that what was done there was done in their absence; that no place of meeting in Brownsville was ever designated, and no notice of meeting was ever given agreeably to the agreement; that the referees did not make their award under hand and seal, and were not sworn, as appears by the report; that the award was not sealed up by referees and by them delivered, so sealed, to the prothonotary; that no notice of the adjournment to Masontown was given to the acting · executor; that the plaintiffs' demand was for 2029 dollars, against which the estate ought to have a credit of more than 700 dollars for moneys paid on account; and yet the award was for $2818, and that interest was allowed on 6 months' rests.

The Court below decided, after hearing evidence and argument upon these exceptions, that they would confirm the award, if the plaintiff would enter a *remittitur* for $924.96; which having been done, the award was confirmed.

In this Court the following errors were assigned: The Court · erred in confirming the award; because,

1. The proceedings and award were not in conformity with the submission, but in violation of it, in this:—By the terms of the agreement, it is agreed that the referees " are to meet at some place in the borough of Brownsville, designated by the parties upon ten days' notice;" yet, by the procurement of the plaintiff, one of the referees adjourned the meeting of the referees from Brownsville to Masontown, and there, in the absence of the defendants, and without the knowledge of such adjournment by both of them, the referees heard the plaintiff and his testimony, and made out their award in his favour.

2. The award was not sealed up by the referees and so delivered to the person in whose favour it was made. But, on the contrary,

it was given to the plaintiff by *one* of the referees "*unsealed*," who gave it to his counsel, and he gave it to the prothonotary, "open and unsealed."

. 3. Gross injustice was done thereby to the defendants.

4. The referees allowed interest after every six months, from the beginning of the account in January, 1819, till the death of the testator.

*Patterson* and *Howell*, for plaintiffs in error.

1. 1 Hill, Carolina, 325; Russell *v.* Gray, 6 S. & R. 145; Rea *v.* Gibbons, 7 S. & R. 204. . The authority must be strictly pursued: 6 Johns. 14; Young *v.* Shook, 4 Rawle, 304. One referee could not change the place of meeting; it could only be done by the parties in writing, under seal or by their consent. Both executors should have consented; neither did: 9 Mass. 334.

2. The agreement was entered into expressly *in pursuance of the Act of* 1806: see §§ 1, 3, and 13; Dunlop, 184, 185, 190; Bachman *v.* Reigart, 3 Pa. R. 270. We are only bound by our stipulation that the award shall be final, &c., in case the proceedings and award have been in strict conformity with the submission: Act of 1705, Dunlop, 21.

3 and 4. The award is for more. than the claim. As to the mode of calculating interest; Graham *v.* Williams, 16 S. & R. 257.

*Veech*, contrà.—On error to an award, this Court can notice nothing but the record: Sands *v.* Rolshouse, 3 Barr, 456, and cases there cited. The very submission precludes either party from a hearing here or below, on exceptions, save for fraud or corruption: Andrews *v.* Lee, 3 Pa. R. 100.

.1. The Court below alone could pass on this alleged error: Browning *v.* McManus, 1 Wh. 177. The fact involved in it is contradicted by the record. The agreement was sufficient to change the place of meeting.

2. This could only be passed on below. But if true, it would not vitiate the award. The Act is only directory; 1 Kent's Com. 465. After entry, it will be presumed to have come properly into the office.

3 and 4. These errors invite this Court to go very far from the record into the merits. But the Court below disposed of these matters in enforcing a *remittitur*, which it is not denied they had a

right to do: Aubel *v.* Ealer, 2 Binn. 583, note; Lee *v.* Willcocks, 5 S. & R. 48.

The opinion of this Court was delivered by

BELL, J.—It has been long and firmly settled that, in respect of awards which require the sanction of the Court of Common Pleas, this Court, sitting in the last resort, will not undertake to rectify errors resting in facts extrinsic to the record. It is the peculiar province of the Court below to take cognisance of and correct the mistakes committed by the referees, on exceptions filed, just as it will remedy those committed by a jury, on a motion for a new trial; and its decision cannot be reviewed, unless indeed there be errors in law apparent upon the record itself: Russell *v.* Gray, 6 S. & R. 145; Harker *v.* Elliott, 7 S. & R. 284; Kline *v.* Guthart, 2 P. R. 490; Wilson *v.* Caldwell, 3 W. 212; Johnson *v.* Porter, 7 W. 356; Sands *v.* Rolshouse, 3 Barr, 456. Exceptions founded in alleged want of notice; substitution of one referee for another; adjournment to another place without the assent of the parties, and the like, are peculiarly within the province of the Court below, and will not be considered in this Court even though the depositions and other evidence should be sent up with the record: Browning *v.* McManus, 1 Wh. 177. And in.this particular there is no difference between awards made under the Act of 1705 and those returned in pursuance of the Act of 1806. These are equally subjected to the power of the Court below, and inquiries touching them are to be conducted in subordination to the same rules. In the case before us, both of the objections preferred here against the validity of the award, rest upon a basis of fact, which the exception seeks to establish *dehors* the record, by means of depositions taken in the Common Pleas and fully considered there. But it is plain that, under the rule to which reference has been made, we cannot look to these or found any action upon them. The alleged misconduct of the referees in adjourning the further hearing of the controversy to Masontown, and their negligence in not causing the award to be enclosed in a sealed envelope before delivering it to the Prothonotary, was for the sole investigation and determination of the Court into which the award was returnable, since these allegations were to be proved or disproved by testimony distinct from, and independent of the record itself. But, if it be averred that the ground of the first exception taken here is also disclosed by the unassisted record, our attention is to be confined exclusively to the record,

and *this* furnishes the answer that all parties in interest consented to the removal of the place of investigation from Brownsville to Masontown. That this is a sufficient answer must be admitted, for it cannot be seriously contended that the parties had not power to agree orally to this change. Where, under such an arrangement, an inquiry is had and award made, the defeated party cannot be permitted to impeach the decision of his own chosen forum, in direct fraud of his agreement. These adjournments from time to time, and from place to place, are frequently found essential, not only to the convenience of the referees and parties, but to the due investigation of the disputed facts, and it has ever been held they may be arranged by the persons interested in the litigation, without the formality of signing and sealing. Of the fact of the arrangement having been made, of course the return of the referees is to be esteemed as full proof in this Court.

But were the difficulties that have been suggested removed from the path of the exceptors, a still greater would remain. By the submission of these parties, it is stipulated that the award to be made in pursuance of it shall not only be final and conclusive, but still further that "there shall be no appeal taken or exception filed." That the litigants had power to enter into this stipulation is not denied; that as a consequence it is binding upon them, except where there has been dishonesty or corruption, is decided: Mussina *v.* Hertzog, 5 Binn. 387; Andrews *v.* Lee, 3 Pa. Rep. 99. And why should it not be? It is for the public interest that bounds be set to litigation. For this reason we recognise the right of disputants to refer their contests to the arbitrament of private tribunals, in preference to the public courts of the country, and surely there is no paramount reason of public policy forbidding an agreement that their decisions should be beyond the reach of further inquiry or review. On the contrary, submissions to private arbitration, being found conducive to public and private tranquillity, have ever been encouraged by our laws. But it is enough the point has been determined. The defendants have taken their chance in the mode selected by themselves; the proper tribunal has declared the conduct of the referees was fair and honest; and the parties found by them to be in default must not be admitted to come into a court of error to raise technical objections, in violation of their own solemn agreement.

It will be perceived that, hitherto, I have not noticed the third and fourth errors assigned here. Indeed, they made so slight an

impression upon me, as a reason for overturning the award, that they had escaped my recollection, until a renewed inspection of the paper-book recalled them. The answer to them is obvious. They propose an investigation of merits without the power or indeed the means of making it. The rule adopted by the referees in computing interest is disclosed by deposition, and being outside that, to which we can alone look, the error, if one was committed, would be without our reach. This might be a subject of regret, were it not that the same matter was brought to the notice of the Common Pleas, and there corrected by a *remittitur* of part of the sum awarded, a condition which that Court had the undoubted right to impose: Aubel *v.* Ealer, 2 Binn. 583, *in note;* Lee *v.* Wilcocks, 2 S. & R. 48.

As, then, the record is without error so far as we are competent to determine, the judgment confirming the award must stand. If injustice has been done the estate of the defendants' testator, it is the result of a course of investigation and power of determination to which they voluntarily submitted themselves.

Judgment affirmed.